761 P.2d 1076

**MOHAVE COUNTY, Arizona, a political subdivision, Plaintiff–Appellee, Cross–Appellant,**

v.

**CITY OF KINGMAN, a body politic; City of Bullhead, a body politic; City of Lake Havasu, a municipal corporation, Defendants–Appellants, Cross–Appellees.**

**No. 1 CA–CIV 9431.**

Court of Appeals of Arizona, Division 1, Department A.

March 31, 1988.

Review Granted Oct. 25, 1988.*

---

1. See also *Golden State Linen Service, Inc. v. Vidalin,* 69 Cal.App.3d 1, 137 Cal.Rptr. 807 (App. 1 Dist. 1977).

* GORDON, C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

William J. Ekstrom, Jr., Co. Atty. by
William F. McDonald, Deputy Co. Atty.,
Kingman, for plaintiff-appellee, cross-appellant.

James E. Chavez, City Atty., Kingman, for defendant-appellant, cross-appellee City of Kingman.

Law Office of Paul Lenkowsky by Paul Lenkowsky, Bullhead City, for defendant-appellant, cross-appellee City of Bullhead.

Vincent A. Iannone, City Atty., Lake Havasu City, for defendant-appellant, cross-appellee City of Lake Havasu.

J. LaMar Shelley, Mesa, for amicus curiae League of Arizona Cities and Towns.

OPINION

HAIRE, Chief Judge.

In this appeal we are required to determine the circumstances under which appellee Mohave County (the county) is entitled to reimbursement from the appellant cities for the expense of housing certain prisoners in the Mohave County jail. None of the appellant cities maintains its own jail, and all persons arrested by city officers, whether on charges involving the violation of a state statute or of a city ordinance, are confined in the county's jail.

Mohave County commenced this action by filing a complaint containing two counts. The first count was for declaratory relief, and sought a declaration of the parties' rights under A.R.S. § 31–121. The second count sought to recover specified amounts from each city for expenses allegedly incurred by the county in housing prisoners on the cities' behalf during a one year period commencing July 1, 1985. On cross-motions for summary judgment, the trial judge entered a final judgment that declared the parties' rights pursuant to the first count. From that judgment the cities have appealed, and the county has cross-appealed. No further action has apparently been taken on the second count concerning

the specific amounts allegedly owed to the county by each of the cities.

There is no controversy concerning the pertinent facts. Since none of the cities has its own jail, in the past all defendants arrested by city officers, whether for violation of city ordinances or of state statutes, have been placed in the county's jail. No contractual arrangements have been made by the cities with the county for the expense of housing any of these prisoners. Prior to the events involved in this litigation, the county has not claimed the right to reimbursement from the cities for such expenses.

In disposing of the motions for summary judgment, the trial court held that the cities were liable to the county for the reasonable cost of housing prisoners being held for trial in city court, as well as for the cost of confining prisoners convicted and sentenced by the city court. In making this ruling, the trial court did not differentiate between city court proceedings stemming from violations of state statutes and city court proceedings stemming from violations of city ordinances. The cities have appealed from this ruling imposing liability on them, raising various arguments to the effect that the ruling is overbroad.

The trial court further held that the cities were not liable to the county for either the pretrial or the post-trial housing of prisoners charged with felony offenses. The county has cross-appealed from this ruling, contending that the cities should be held liable for the cost of housing defendants charged with felonies committed within their respective jurisdictions until such time as the defendants are arraigned in the superior court or discharged.

It is apparent from the record and the arguments presented in the trial court that the trial judge's ruling was to some extent based upon his conclusion that the Arizona Supreme Court's decision in *City of Phoenix v. Superior Court*, 139 Ariz. 175, 677 P.2d 1283 (1984), was controlling on several of the issues before him. Accordingly, much of the argument presented in this appeal has centered on the question of the applicability of that decision to the issues raised here. For the reasons set forth later in this opinion, we find that the court's holding in *City of Phoenix* is distinguishable and that it provides no controlling guidance concerning the issues directly presented in this litigation. We therefore proceed to a consideration of the language of A.R.S. § 31–121 so that we may determine the respective rights and duties of the parties, in accordance with the county's request in count I of its complaint.

Prior to its amendment in 1980, the only provision of § 31–121 that was arguably pertinent to the issues presented in this appeal was subsection (A):

"A. The sheriff shall receive all persons committed to jail by competent authority and provide them with necessary food, clothing and bedding, the cost of which shall be a county charge."

Arguably, since the only limitation imposed is that the commitment be made by a "competent authority," the county would be required under subsection (A) to furnish jail facilities and related care at county expense for all jail prisoners, regardless of whether the charges against them involved violations of state statutes or city ordinances, or whether their convictions occurred in a city court or a county court. Although a provision substantially identical to § 31–121(A) has existed in Arizona's code since at least 1901 (see Arizona Civil Code 1901, ¶ 1194), there has been no Arizona case law addressing the extent of the obligation imposed on the county under this subsection for the housing of defendants involved in city court proceedings. In passing, we do note that the California Supreme Court has interpreted a substantially identical statutory provision as requiring a city to reimburse a county where the county jail sentence was imposed by a city court on a defendant convicted of a violation of a city ordinance. *See Sonoma County v. City of Santa Rosa*, 102 Cal. 426, 36 P. 810 (1894).

However, we need not attempt to determine what the rights of the parties would have been under § 31–121(A), because that provision has been substantially modified by a subsequent enactment. In 1980, the

legislature amended § 31–121 so as to add subsections (C) and (D). *See* Laws 1980, ch. 117, § 2. Subsection (C), which we consider to be dispositive here, now provides:

"C. A person who is arrested or charged with a violation of a city or town ordinance may be housed in a city or town jail, or in a county jail if the city or town makes contractual arrangements with the board of supervisors of that county to house prisoners. A county board of supervisors shall arrange to house a person who is arrested or charged with a violation of a state statute in a county jail or may arrange to house such a person in a city or town jail if the board contracts with the city or town to house such prisoners."

The language of subsection (C) is unambiguous. It deals with two categories of persons: (1) those who are arrested for or charged with violating a city or town ordinance and (2) those who are arrested for or charged with violating a state statute. The statutory language makes the responsibility for the housing of jailed prisoners solely dependent upon the nature of the offense charged. If the charge involves a "violation of a city or town ordinance," the person is to be housed in the city or town jail [1] unless "the city or town makes contractual arrangements with the board of supervisors of that county to house prisoners." On the other hand, if a person is charged with "a violation of a state statute," the county board of supervisors "shall arrange to house [that] person ... in a county jail" unless the board of supervisors "contracts with [a] city or town to house such prisoners."

Thus the nature of the charge is the sole criterion for the determination of the initial responsibility for prisoner expenses as between a city or town and the county. The only statutory exception (if it can be so classified) comes into play when a city and county have made contractual arrangements with each other. Under the statute, whether the arresting officer is employed by the city or by the county is immaterial. The statutory language does not limit the county's responsibility to house persons arrested for or charged with violating state statutes to those situations in which a county officer makes the arrest.[2] Likewise, the fact that a city court may or may not have continuing jurisdiction after conviction is not a relevant factor under the statutory language.

■ Applying A.R.S. § 31–121(C) to the judgment entered in this case, we hold that the trial judge correctly found that the cities were not liable to the county for the cost of housing prisoners arrested for or charged with felony offenses. Since under Arizona law a felony offense can only arise from a violation of a state statute, § 31–121(C) requires the county to bear the expense of housing prisoners arrested for or charged with such offenses. Accordingly, the county's cross-appeal is without merit.[3]

■ The portion of the trial court's judgment that imposed liability on the cities for the cost of housing prisoners pending trial

---

1. A.R.S. § 31–121(C)'s use of the word "may" in addressing a city or town's jailing obligation constitutes a recognition of the fact that most cities and towns do not have their own jails. Accordingly, most of them will of necessity be required to make contractual arrangements with a county for the housing of prisoners. On the other hand, the use of the word "shall" in addressing the county's jailing obligation constitutes a recognition of a county's statutory obligation to provide jail facilities. We know of no statutory provision similar to § 31–121(A) that obligates a city or town to construct such facilities.

2. A.R.S. § 28–1055 previously provided for a different treatment of persons charged with a criminal violation of the Motor Vehicle Code:

"When under this chapter any incorporated city or town exercises its jurisdiction and sentences an offender to confinement, the imprisonment shall be in the city jail, or in a county jail if an agreement has been made therefor."

This provision was deleted when § 28–1055 was amended in 1983. *See* Laws 1983, ch. 271, § 44.

3. We reject Lake Havasu City's argument that § 31–121(C) pertains to pretrial detention only. We find nothing in its language or in any of the other provisions of Article 2, Chapter 1, Title 31, to indicate that these statutory provisions are limited to periods of pretrial incarceration.

in city court, as well as for the cost of housing such prisoners after conviction and sentencing in city court, is overbroad. Under § 31–121(C), the cities' responsibility for such housing costs is limited to those prisoners whose confinement has resulted from charges involving the violation of a city or town ordinance.[4] The county has the initial responsibility where the misdemeanor confinement has resulted from a charge involving the violation of a state statute.

As previously indicated in this opinion, we find that the Arizona Supreme Court's decision in *City of Phoenix v. Superior Court* is distinguishable, and that it is not controlling on the issues involved in this appeal. In *City of Phoenix*, the only issue raised was whether the county or the city should be responsible for hospitalization and examination costs resulting from a Rule 11[5] competency determination concerning a prisoner who had been arrested by a city officer and was being held pending city court proceedings. The superior court had decided that the city was responsible for the payment of such costs, and the city sought special action review in the Arizona Supreme Court.

The supreme court considered the provisions of A.R.S. § 31–121(C) and § 13–3992 (pertaining to the allocation of the expense of maintaining an incompetent defendant), together with the provisions of an agreement between the city and the county, and decided that the trial court had correctly held the city liable for such hospitalization and examination costs, incurred pending trial in the city court. The court further held that the county would be liable for such costs after a determination of incompetency and commitment of the defendant to the state hospital.

The issues presented in this appeal do not involve questions concerning the responsibility for the payment of Rule 11 examination and hospitalization costs, nor the interpretation of A.R.S. § 13–3992. Rather, we are solely concerned with issues involving the responsibilities of the parties for the housing of prisoners pursuant to A.R.S. § 31–121(C) unaffected by any written contractual arrangement between the parties. Accordingly, we do not find that the supreme court's decision in *City of Phoenix* constitutes binding precedent.

We recognize that this court is not at liberty to disregard prior decisions of the Arizona Supreme Court on issues subsequently presented to us. *See McKay v. Industrial Commission,* 103 Ariz. 191, 193, 438 P.2d 757, 759 (1968). We also candidly admit that much of our analysis in this opinion is in conflict with dicta contained in the supreme court's decision in *City of Phoenix.* However, when consideration is given to the specific and limited issue presented and determined by the Arizona Supreme Court in that decision, we find it clearly distinguishable and not controlling on the wholly different legal and factual issues presented to this court in this appeal.

That portion of the trial court's judgment which held that the cities were not liable to the county for the cost of housing prisoners arrested for or charged with felonies is affirmed. The remainder of the judgment is reversed, and the matter is remanded for the entry of a modified judgment consistent with this opinion.

JACOBSON, P.J., and GREER, J., concur.

---

4. Contrary to Lake Havasu City's argument, in view of the more specific language of § 31–121(C), we do not interpret A.R.S. § 11–601(3) as making the county liable for *all* post-trial jail confinement, including such confinement resulting from city ordinance violations.

5. Rule 11, Arizona Rules of Criminal Procedure, 17 A.R.S.